SAMPLE *v.* BUTLER UNIVERSITY ET AL.

[No. 26,785. Filed February 1, 1937.]

*Thomas A. Daily, Wilson S. Daily* and *John H. Daily,* for appellant.

*Johnson & Zechiel,* for appellees.

FANSLER, J.—Charles T. Whitsett and Lina B. Whitsett were married in 1896. Pursuant to the terms of an antenuptial contract, they each invested $10,000 in

real estate, the title to which was taken by them as tenants by the entireties. From time to time they sold parcels of the real estate held as tenants by the entireties and reinvested in other property, title to which was taken in the same manner, and thus the value of their holdings increased. Each had a child by a former marriage; appellant the daughter of Mrs. Whitsett, and appellee Albert Noble Whitsett the son of Charles T. Whitsett. On the 24th day of September, 1912, the husband and wife executed wills identical in all respects except as to their names. The body of the will of Charles T. Whitsett is as follows:

"I, Charles T. Whitsett, of Indianapolis, Indiana, do make and declare the following as my last will and testament.

"Item 1. It is my will that all my just debts be paid from any fund available for that purpose.

"Item 2. Whereas, it has been agreed between myself and my wife, Lina B. Whitsett, that we shall each make a separate will bearing the same date disposing of our property owned by us jointly as husband and wife and situated in the State of Indiana, in such a way that our children shall derive a certain benefit therefrom after the death of the survivor of us, and that after said wills are so made neither of us will revoke or destroy either of such wills or make any other will or codicil without the full consent and agreement of both.

"Now, therefore, in consideration of said agreement and in execution thereof, I, Charles T. Whitsett, devise and bequeath all the property in the State of Indiana, which may be owned by myself and my said wife, jointly, and which may come to me as the survivor of us, and which I may own at the time of my death to Butler University, a corporation formed under the laws of the State of Indiana, and now conducting a school for higher education at Irvington, Indiana, now within the corporate limits of the City of Indianapolis.

"Subject, however, to the following charge and trust. Within thirty days after said property passes to said University its value shall be fixed by three competent and disinterested appraisers selected by

the parties interested or appointed by the Court having probate jurisdiction in Marion County, Indiana, and if either of the parties interested desires it there shall be a reappraisement of the same made in like manner at the expiration of each period of five years after the first appraisement. The said University shall then pay a sum equal to six per cent per annum upon the value so fixed, without any deductions for any purpose, in monthly installments at the beginning of each month to my son Albert Noble Whitsett, and my wife's daughter, Mrs. May C. Ricardi, in equal parts share and share alike so long as they both shall live, and after the death of either of them whether before or after this will becomes effective the whole sum to the survivor of them during the life of such survivor. Upon the death of the survivor of said children all of said property shall become the property of said University and free from any lien or charge created by this will, and if said University shall accept the terms of this will the payment of said sums to said children shall be a first lien and charge upon all of said property and all income therefrom which may be enforced by foreclosure or other appropriate proceeding. Under the supervision and direction of the court having probate jurisdiction in Marion County, Indiana, said University shall have the right to sell, exchange, repair or remodel any of said property provided only that the lien and charge above mentioned is in no way impaired by such change."

Lina B. Whitsett died on the 16th day of November, 1913. On September 25, 1915, Butler University executed and delivered to Charles T. Whitsett the following instrument:

### "ACCEPTANCE OF TRUST.

"WHEREAS: Butler University is now fully advised of all the contents of each of the separate Last Wills and Testaments of Charles T. Whitsett and Lina B. Whitsett his wife duly executed on the 24th day of September, 1912, and said execution duly attested by said John B. Elam, and Cassius C. Shirley, all of Indianapolis, Indiana, by which said wills the Real Property of said testator

and testatrix was disposed of after the demise of the survivor of them and Butler University named therein as final beneficiary on the condition as expressed in each of said wills, 'if Butler University shall accept the terms of this will.'

"Now, therefore, Butler University does hereby accept the said trust upon all the conditions set forth in said will as to all the real property left or that may be left by either said testator or testatrix under and by virtue of said wills or either of them. But said Butler University hereby declines and disclaims any right, title or interest now, or at any further time, in any of the personal property owned at any time by either said testator or testatrix or jointly by both of them and whether covered by said wills or either of them or not.

"BUTLER UNIVERSITY,

"By Hilton U. Brown, President."

Charles T. Whitsett died on August 21, 1928. At the time of the death of Lina B. Whitsett neither of their wills had been revoked or destroyed, and neither of them had made or executed any other will or codicil. On May 20, 1918, and August 5, 1918, Charles T. Whitsett conveyed to Butler University certain real estate, owned and held by Lina B. Whitsett and himself as tenants by the entireties at the time of her death, and, in consideration therefor, Butler University entered into three contracts with Charles T. Whitsett described as "Life Annuity Bonds." The first bond recites that it is issued in consideration of a gift of real estate in the principal sum of $3,500, which is accepted by the University, and, in consideration therefor, the University agrees to pay an annuity of $210 to Charles T. Whitsett during his lifetime. The second bond recites that Charles T. Whitsett has made a gift to Butler University in the principal sum of $10,000, $9,000 in real estate and $1,000 in government bonds, which has been accepted by the University; that, in consideration of the gift, the University promises and agrees to keep the improve-

ments on the real estate transferred in repair, and to permit Charles T. Whitsett to reside in the property during his natural life; and the University agrees to pay, after the death of Charles T. Whitsett, an annuity to be divided between Albert N. Whitsett and Grace Mayhew; the amount to Albert N. Whitsett being $100 per year for his life, and the amount to Grace Mayhew being $500 per year for her life, with a provision that if Albert N. Whitsett survives Grace Mayhew he shall receive $25 per month during his life. The third bond recites that it represents a gift of property of the value of $25,000, which is accepted by the University, and, in consideration therefor, it is agreed that it will pay an annuity to Charles T. Whitsett amounting to $2,100 per year during the period of five years from August 1, 1919, if he shall live that long, and that if he should not survive that period it will pay to Albert N. Whitsett, from the date of the death of Charles T. Whitsett, an annuity of $1,200 per year for the remainder of the five-year period; that, should the annuitant survive the first five-year period, it will pay to him so long as he lives $1,500 per year, in monthly installments; and from and after his death, provided his death occurs more than five years later than August 1, 1919, it will pay to Albert N. Whitsett an annuity of $900 during his lifetime. All of the bonds provide that they shall not be transferred without the consent of the University. In addition to the transfers of property above referred to, Charles T. Whitsett transferred and conveyed to the University certain personal property after the death of Lina B. Whitsett, amounting in all to $13,720. $8,120 of this amount, all of which with the exception of $4,600 was in cash or government bonds, was given to the University without any consideration. It is recited in the special findings that an annuity agreement was entered into as a consideration for the payment of this money,

but the agreement set out is merely an agreement to change the terms of a former annuity agreement which provided for the payment of $75 per month to Albert Noble Whitsett, and to substitute therefor the payment of $50 per month to Albert Noble Whitsett and $25 per month to Grace Mayhew. It does not purport to have been made as a consideration for the $8,100. At various times he delivered stock certificates and cash, amounting to $5,600, to the University, in consideration of which the University agreed to accept the stock and money as a gift, and to pay to Charles T. Whitsett during his natural life the dividends and proceeds of the stocks actually received, and after the death of Charles T. Whitsett to pay to Robert B. Whitsett, Jr., during his life, the dividends actually paid upon the stock. Upon the death of Charles T. Whitsett and Robert B. Whitsett, Jr., all payments were to cease and the stock and dividends were to be the property of the University.

Appellant, the daughter of Lina B. Whitsett, brought this action to enforce payment to her of annuities by Butler University upon all of the property, real and personal, thus conveyed and delivered to the University. It is the theory of the complaint that all of the property conveyed to the University was the joint property of the Whitsetts; that Charles T. Whitsett had no power to divert it to any other use than that provided by the wills, and that, having cognizance of the terms of the wills, and having agreed to accept the property under the conditions provided by the wills, acceptance of it by the University binds it to pay the annuities provided for in the wills.

The facts above recited are taken from the special findings and are sustained by the evidence. There is also a special finding to the effect that at the time of the death of Lina B. Whitsett "all the property owned by said Lina B. Whitsett and Charles T. Whitsett, real

and personal except their wearing apparel, and certain minor articles owned by them jointly, upon the death of said Lina B. Whitsett, was taken by said Charles T. Whitsett, subject to the charge and trust as specifically set forth," in the wills.

Appellee Albert Noble Whitsett filed an answer to the complaint admitting the allegations thereof. The other appellees filed a general denial, and, upon the facts found as indicated above, and upon others which we need not notice, the court concluded the law was with the defendants and that the plaintiff take nothing.

Appellant assigns error upon the overruling of her motion for a new trial and upon the conclusions of law.

The purpose of the parties in making the wills is so clearly indicated by the contract set out in item two that there can be no reasonable doubt as to their intention. It is contended by appellees, and the case seems to have been decided below upon the theory, that the words, "which I may own at the time of my death," are controlling, and that they require the wills to be construed as intending to authorize the survivor to dispose of all of the joint property in any manner and for any purpose during his lifetime; that there was no intention that he should be bound by the contract referred to in the wills unless he chose to be bound by it by retaining the joint property of the parties until his death without disposing of it. But such a construction does violence to the very agreement which the wills were made to carry out. Under such a construction the contract to dispose of their property "in such a way that our children shall derive a certain benefit therefrom after the death of the survivor of us," and the provision that neither would revoke or destroy the will or make another will or codicil without the consent of the other, were mere empty gestures, hardly worth the trouble of making. But effect can be given

to the words, "which I may own at the time of my death," without destroying the effect of the contract which the wills were made to carry out. During their married life the Whitsetts had made considerable profits by changing their real estate investments from time to time. It is clear that the parties intended that the survivor should have the use and benefit of their joint property for life. It is not unreasonable to conclude that it was their intention that if it should be necessary the survivor might have recourse to the corpus of the joint estate for support and maintenance in the event the income should be inadequate. Consistent with this view, it must be concluded that the parties intended no more by the use of the words quoted than to avoid a restriction upon the disposal of the property in case it might be necessary for the reasonable needs of the survivor or for advantageous reinvestment. Such a construction is consistent with the agreement of the parties and their relationship to each other. Any other construction would result in imputing to the parties an intention to destroy the very contract which the wills were made to carry out.

Though it is not necessary to a determination of the intention of the parties, there is in evidence a letter from Charles T. Whitsett to his son, which clearly indicates his understanding of their intention and the purpose of the wills. He said:

"She (Mrs. Whitsett) wanted us to make wills and fix what we had so it would take care of she and I first as long as either of us lived—then—the children get what we lived on—the income of our property—and then after that so that the principal could not then be squandered or lost but give it to Butler College when both you and May were gone.

"That was our long studied plan—that you and she have just what we had—to live on while we both lived—

the income—and when either she or I died the other of us was to have all the income for life—less the expense of care and repairs and so forth, of course which would be perhaps 6% on the total valuation of the property net income.

"So she made will to that effect—and so did I; whether others liked it or not—it was our judgment—from experience and our knowledge of both the children—that this was the best thing to do to satisfy our *own* minds that they would certainly have a monthly sum paid each & *for life*. And there were other reasons, not necessary to name. It simply means that on the death of the survivor of Lina and I—Butler College is to take charge of the property—manage it and no matter where you or May may be—only that you are living—they are to pay you and her 6% *net* of the then appraised valuation of the property we both owned or rather that the survivor of us owned at the time of the survivor's death—in monthly installments on the first of each month—share and share alike—while you both lived. Upon the death of either of you the full said 6% *net* is to be paid in like manner to the survivor of you two as long as the survivor of you and she should live. Then Butler College owns the property and the trust is ended; title going to them automatically upon the death of the survivor of you two.

"Our little monthly checking bank account—or that of the survivor of she and I is not included in the wills—nor any other personal property or household effects. But the real estate that we owned *jointly* at the time of the death of the survivor of us two is covered by the will.

"The survivor of us has the same right to rent, repair, rebuild, remodel, or sell any of the property covered by

the will—during the life of the said survivor—as if no will had been made by either of us.

"Our aim was in short—double: that is after both she and I was gone,

"1st to make certain our children's support—to the extent named.

"2nd to prevent any of the property that had supported she and I and you and May for the life term of each should not be squandered but then used for educational purposes.

"This was her will. It was mine also. That is it will be mine when like her I am gone the way of all the earth."

There is here no indication of a desire or intention that the survivor should be permitted to alienate the estate so as to provide an income for strangers to the exclusion of the two children.

Under the terms of the contract, as interpreted in the light of the provisions of the will, the survivor had the right to dispose of any or all of the corpus of the estate for his reasonable needs or for the purpose of reinvestment for the benefit of the estate, but in such event it is clear that the parties intended that the terms and provisions of their contract should attach to any property in which the corpus of the estate was reinvested. In other words, that which was necessarily used and consumed must, of course, be lost, but the remainder of their joint estate was to be preserved in its original form, or, if the investment were changed, then, in whatever form it might be at the death of the survivor, for the ultimate benefit of their children. The mutual agreement of the makers of the wills was sufficient consideration to bind the promisors. The agreement is similar in effect to a contract to bequeath or devise property at the death of the promisor. Concerning

such a contract it is said in Alexander's Commentaries on Wills, A-Vol. 1, p. 170: "The fact that a person has agreed, for a valid consideration, to bequeath and devise all of the property owned by him at the time of his death, does not prevent the promisor from making gifts of his property during his lifetime. Such gifts, however, must not be made for the purpose of defeating the agreement; but gifts which are reasonable, absolute, bona fide and not testamentary in effect, may be made. For instance, if a person promises to will one-half of the estate owned by him at the time of his death and thereafter makes a deed of gift to another in which he reserves a life interest to himself, such gift will be regarded in the nature of a testamentary disposition in order to protect the promisee. Equity interposes where the gift or transfer was made for the purpose of defrauding the promisee of the property which should go to him under the contract, the weight of authority being that an agreement to will all the property he possesses at his death at the most restricts the promisor to its reasonable use."

And in Storey on Equity Jurisprudence (14th Ed) vol. 2, §1075, it is said: "If a person covenants or agrees or in any other manner validly binds himself to give to A by his will as much property as he gives to any other child, he may put it out of his power to do so by giving away all his property in his lifetime. Or if he binds himself to give to A as much as he gives to B by his will, he may in his lifetime give to B what he pleases, so as, by his will, he shall give to A as much as he gives to B. But then the gifts which he makes in his lifetime to B must be out and out. For if, to defraud or defeat the obligation which he has thus entered into, he gives to B any property real or personal over which he retains a control, or in which he reserves an interest to himself, then in order to protect the agreement or obligation which he has entered into, and to defeat the fraud at-

tempted upon that agreement or obligation, and to prevent his escaping as it were from his own contract, Courts of Equity will treat this gift to B in the same manner as if it were purely testamentary, and were included in a will; and the subject-matter of the gift will be brought back and made the fund out of which to perform the obligation." It is also said in Alexander's Commentaries on Wills, A-Vol. 1, p. 169: "Thus where one party has agreed to dispose of specific property by will to another for a valid consideration, equity will fasten a trust upon the property in favor of the promisee which he may follow into the hands of the heirs-at-law or devisees of the promisor, or grantees without consideration or with notice."

It is true that in the case at bar a fee simple interest in the property itself was conveyed, and no legal title was reserved in Charles T. Whitsett, but equity considers the substance and not the form, and though all legal title to the property, without reservation, vested in Butler University, still, in fact, he retained a beneficial interest in the thing which the property purchased, an annuity bond. In effect he converted the life enjoyment in the property and the annuity to be derived therefrom for his son and his wife's daughter into an annuity bond to be enjoyed by himself during his life and his son and others thereafter to the exclusion of his wife's daughter. Where property has been wrongfully converted and its character changed or its proceeds invested in other property, and the proceeds can be traced, equity has found no difficulty in recovering the latter property and applying it as the original property should have been applied. The agreement of the University, a substantial and solvent institution, was no doubt deemed as safe as a lien upon the property. The result was the same as though he had deeded the property to the University, subject to the payment

of an income to himself for life equal to the annuities provided in the agreement, and subject to a lien for the payment of the annuities after his death. If he had held title and possession of the property until his death he would have enjoyed the income from it, which would have come to him directly. By exchanging the property for bonds, providing an annuity for himself during his lifetime and for others thereafter, he still enjoyed an income produced by the property, but which came to him indirectly as an annuity upon the bonds, rather than directly as rental or interest or earnings from the property. But in either case the property provided the income. By his deeds and conveyances he did not alienate his enjoyment of the fruits of the property during his lifetime, nor did he give the fruits of the property without reservation to the annuitants named in his contracts, since he reserved the right, with the consent of the University, to change the contracts, and thus the beneficiaries under them, and did, in fact, change them in some instances. It follows that the provisions in his contracts for annuities after his death are testamentary in character. The purpose of the transfers to the University during his lifetime is obvious. It was to procure for his housekeeper and others an annuity that, by his solemn agreement with his wife, was to be divided between his son and her daughter, without depriving himself of income from the property, and by reason of it, during his lifetime. There could have been no other purpose. This then is a fraud upon his wife and upon those who were intended to benefit from the property. The thing speaks for itself. The agreement was that annuities which their joint property would purchase should go to their children, not that the property should go to them. The property has gone where it was intended— to Butler University. Only the benefits which it purchased have been diverted. Therefore equity will follow

and fasten a trust upon those benefits as against those grantees without consideration who were to receive it under the annuity bonds. Equity requires justice before generosity, and justice requires that the benefits, by way of annuities arising from their joint estate, shall go to those to whom he contracted it should go. Those who by his contracts with the University were to receive the annuities after his death are grantees without consideration and have no standing in a court of equity.

The conveyances of real estate to the University, with the exception of the residence, were not gifts, although so described in the annuity bonds. They were sales of the property for a consideration. The transfers of personal property were gifts without consideration. The University had notice of the terms of the will, and that the real estate conveyed was held by the husband and wife jointly at the time of the wife's death. By its acceptance it indicated its agreement to take the real property under the terms expressed in the wills, but indicated a doubt as to whether personal property was covered by the wills, and an intention not to accept personal property under the conditions provided for in the wills. Since it knew the terms of the wills, it accepted conveyances from the surviving husband, limited in their effect by his power to alienate the property under the terms of the wills. It had notice of all of the facts which limited his power of disposition, and was bound to know that he could alienate only for legitimate purposes, and not for the purpose of defeating his agreement with his wife. During all the time it was paying annuities to Whitsett he was making gifts of personal property to the University. These gifts, twenty-one in number, aggregated over $13,000 in ten years, which was only $5,000 less than the total annuities paid to him by the University. The fact that he had money, government bonds, and other securities, which he did

not need for his support, and which he felt able to bestow as a gift, was ample notice to the University that the conveyances of the real estate during his lifetime were not made for the purpose of providing for his reasonable necessities and needs. The real estate in his hands would have provided some income, doubtless more than the amount by which the annuities which he received exceeded the gifts which he made to the University. The University was bound to recognize the obvious fact that the sole purpose of the conveyances of the real estate to it, in so far as it affected benefits from the real estate after his death, was to procure those benefits for his housekeeper, his son, and others, and to defeat the agreement that appellant, his wife's daughter, should participate equally with his son in any such benefits. It accepted such conveyances upon other terms at its peril. "Equity will fasten a trust upon the property in favor of the promisee which he may follow into the hands of ... grantees ... with notice." It may hold the property only by doing that which the wills and its agreement required that it do and which Whitsett should have in conscience and good faith required of it as consideration for the conveyances. By accepting the conveyances with knowledge of the fraud it becomes responsible for the consequences thereof. In the acceptance of the terms of the wills by the University it is denominated a trust. It is not a trust. It is a mere contract by which the University agreed to pay an annuity for a consideration. It is no more a trust than the agreement of an insurance company to pay an annuity for a consideration. But it is a contract, and the University cannot accept the property, with knowledge that the conveyances to it are made for the purpose of defeating the agreement of the husband, and retain possession, without meeting the terms of that agreement and its acceptance of it. Since the University had no-

tice, whether it gave full consideration is not material. But it will be noted that it paid to Charles T. Whitsett in annuities during his lifetime only $5,005 more than it received from him in outright gifts of money and securities. For ten years before his death it had the possession and enjoyment of the income from more than $28,000 worth of real estate. The net annuities to Charles T. Whitsett during his lifetime were therefore less than 2 per cent. of the value of the real estate. Since the University no doubt paid no taxes upon this real estate, 2 per cent. of its value would seem to be no more than adequate compensation for the rents and profits to be derived from the property during his lifetime. It does not seem adequate consideration for the fee in the property. It is at any rate less than the University had agreed to pay upon the acceptance of the property at any time that Charles T. Whitsett should die. The University therefore accepted no undue burden by taking the property during his lifetime, and is in no worse position than if it had waited until his death and then accepted it under the terms of the wills which it had indicated were acceptable.

The same rule would apply to personal property which was the joint property of the husband and wife, but there was no evidence as to the kind or amount or character of this property. The husband survived his wife by fifteen years. He may have acquired personal property of his own. There is no evidence that any of the personal property which was given to the University was owned jointly by the husband and wife at the time of her death.

The finding of the court that, in accepting the conveyances of real estate, the University acted in good faith, is not supported by the evidence. Doubtless there was no actual fraud, but the thing which was done had the effect of defrauding appellant. The

University is chargeable with knowledge of the conditions of the contract between the husband and wife, and, regardless of the actual intentions of the parties, since the transactions accomplish a fraud, they must be treated as fraudulet.

The facts are not in dispute, and no good purpose would be served by ordering a new trial. The judgment is reversed, with directions to enter a decree which will require that appellee Butler University pay to appellant and to appellee Albert Noble Whitsett, annually, in equal shares, 6 per cent. upon the value of the property of which Charles T. Whitsett and Lina B. Whitsett were seized as tenants by the entireties at the time of her death and which was afterwards conveyed to Butler University; and that the value of the property from time to time, for the purpose of determining the amount of the annuities, shall be determined as provided for in the wills of the Whitsetts; and that upon the death of either appellant or Albert Noble Whitsett the annuities shall be payable to the survivor for life; and that the University shall pay interest at the rate of 6 per cent. on all deferred payments, but that it shall be credited as against Albert Noble Whitsett with any amount which it may have paid to him under the annuity contracts made with his father.

### ON MOTION TO MODIFY MANDATE.

FANSLER, J.—Within the time for filing petitions for rehearing, which has now expired, the appellant has filed what is denominated a motion to modify the mandate in the opinion heretofore announced, but which is in substance a petition for a rehearing, since it seeks a change in the opinion with respect to the effect of the language in the will. It is contended that the contract and the wills must be construed as indicating an intention to affect all of the property of

which the survivor should die seized, that is, that the survivor contracted that their two children should be the beneficiaries of all of the property, real and personal, of which the survivor should die seized, regardless of whether it was property which had been held by them as tenants by the entireties or property which the survivor held individually. But the contract and the will relate only to the disposition of "our property owned by us jointly as husband and wife . . . in such a way that our children shall derive a certain benefit therefrom," and the devise and bequest refer only to "all the property in the State of Indiana, which may be owned by myself and my said wife, jointly, and which may come to me as the survivor of us, and which I may own at the time of my death." The construction contended for is strained and unreasonable. The petition is denied.

The appellee Butler University has filed a petition to modify the mandate in so far as it affects Albert Noble Whitsett, who was an appellee. Mr. Whitsett assigned no errors and presented no brief, and the direction for a judgment in his favor was improvidently entered, for the reason that his cross-complaint asking a judgment below had been dismissed, and he has no pleading in the record by which he prays judgment of any kind in his favor. It further appears by a showing in connection with the petition to modify the mandate, that, by a written agreement between the appellees Albert Noble Whitsett and Butler University, all questions between them were settled and compromised before the termination of the trial.

The petition to modify the mandate is granted, and the mandate is modified to read: The judgment is reversed, with directions to enter a decree which will require that appellee Butler University pay to appellant annually, during her life, 3 per cent. upon the value of

the property of which Charles T. Whitsett and Lina B. Whitsett were seized as tenants by the entireties at the time of her death and which was afterwards conveyed to Butler University; and that the value of the property shall be determined from time to time, as provided for in the wills of the Whitsetts, for the purpose of determining the amount of the annuities; and that upon the death of Albert Noble Whitsett, if it occurs prior to the death of appellant, Butler University shall pay to appellant 6 per cent. upon the value of such property from the time of the death of said Whitsett, for the remainder of her life; and that the University shall pay interest on all deferred payments at the rate of 6 per cent.