**HAMILTON v. HAMILTON.**

No. 14768.

Court of Civil Appeals of Texas.

Dallas.

May 7, 1954.

Rehearing Denied June 4, 1954.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellant.

Wynne & Wynne, and William A. McKenzie, Dallas, for appellee.

YOUNG, Justice.

In District Court suit No. 58,779–C, styled Norman Hamilton v. Cleo Mason Hamilton, plaintiff (appellant here) sought to establish that separate wills of his parents, William B. and Mary Lou Hamilton, of date February 3, 1938, were executed pursuant to an agreement that the community estate on death of each would pass to their son Norman; and cause No. 59,-697–D, styled Estate of William B. Hamilton, Deceased, was one appealed from the Dallas County Probate Court, wherein Norman Hamilton was contestant, challenging the validity of a later will of William B. Hamilton of date May 16, 1951. On agreed motion, the two actions were consolidated and tried to a jury with verdict on special issues. Later, under circumstances hereinafter detailed, the causes were again severed, with new trial granted in the will contest, judgment rendered non obstante veredicto that Norman Hamilton take nothing in the contract suit, from which latter judgment this appeal is prosecuted; Cleo Mason Hamilton excepting to and appealing from the court's order of severance.

Mrs. Cleo Hamilton is the second wife of William B. Hamilton who died August 3rd, 1951; by his second will having bequeathed to said wife his lands in fee simple, naming her as independent executrix. This instrument was attacked by Norman Hamilton on grounds of testamentary incapacity

and undue influence; aside from the claim of constructive trust sought to be established on the property involved in said second will by reason of the alleged prior agreement of William B. Hamilton and Mary Lou Hamilton with reference to their respective estates. Material allegations of petition in said cause No. 58,779–C should be quoted: "(3) That on or about February 3, 1938, the said William B. Hamilton entered into a valid, legal and binding contract and agreement with his wife, Mary Lou Mitchell Hamilton, now deceased, under the terms of which said parties agreed with one another and by and between themselves, that they would each make and execute a will at said time under the terms of which their respective estates would be willed and bequeathed to Norman Hamilton, who is in the son of said parties, and that said parties in carrying out said agreement each made and executed his and her Last Will and Testament carrying out the terms of said agreement. That the said Mary Lou Mitchell Hamilton in carrying out the terms of said agreement at said time wrote a holographic will wholly in her own handwriting, on her own personal stationery, and signed the same in accordance with said understanding. That the said William B. Hamilton in carrying out said agreement, made his Last Will and Testament on said 3rd day of February, 1938, and executed the same in the presence of two witnesses who executed the same at his request and in his presence as required by law. That the said Mary Lou Mitchell Hamilton thereafter and on or about the 29th day of October, 1941, brought the aforesaid holographic will to the office of Hamilton and Hamilton, Attorneys, in the Kirby Building, in the City of Dallas, Dallas County, Texas, and had said will typed and re-written, and that she made no changes therein except to add a clause thereto providing that no further action should be had in the Probate Court other than the probating of said will and the filing of an inventory, appraisement and list of claims, and that she re-executed said will under all formalities required by law, and that the same was duly probated in the Probate Court of Dallas County, Texas, on or about the 25th day of February, 1944, the said Mary Lou Mitchell Hamilton having become deceased on the 17th day of January, A.D.1944. That said contract and agreement was binding on said parties in all respects as though they had made a joint will, and that the said William B. Hamilton did not thereafter have the legal right and capacity to breach and violate said contract by the purported execution of a later will changing the terms of his said Last Will and Testament dated as aforesaid, the 3rd day of February, A.D.1938.

"(4) That there is a real and present controversy between Plaintiff, Norman Hamilton, and Defendant, Cleo Mason Hamilton, as to the validity and effect of the above described contract between William B. Hamilton and Mary Lou Mitchell Hamilton. That the said Cleo Mason Hamilton has denied and still denies the existence and validity of said contract and declaredly intends to claim and does claim under the said alleged will in contravention and disregard of said contract."

Issue 1 of the court's charge related to the will of William B. Hamilton, of May 1951; and, omitting appropriate definitions, the jury verdict was in effect that, (1) at time he executed this said last will, William B. Hamilton did not possess testamentary capacity; (2) execution of the May 1951 will by William B. Hamilton was not procured by undue influence on part of proponent Cleo Mason Hamilton; (3) on February 3, 1938, William B. Hamilton and Mary Lou Hamilton entered into an agreement whereby they each agreed to will and bequeath their respective estates to Norman Hamilton. Promptly thereafter appellant moved for judgment on this jury verdict, appellee Cleo Mason Hamilton filing motions to correct same and for judgment non obstante veredicto. After hearing of motions, that of Norman Hamilton was sustained, adversary motions overruled; and judgment of March 12, 1953 signed and entered by the court in favor of appellant as to both causes—the contract suit and will contest.

Thereafter, on April 24, 1953, on hearing of amended motion for new trial filed

by Cleo Hamilton, a "reformed judgment" was entered by the trial court (1) severing the two causes on ground "that the interests of justice require a different disposition" thereof; (2) granting Cleo Hamilton a new trial in the will contest for the reason that the "jurors made a unanimous clerical error" in answering special issue No. 1, "No," after they had decided upon an affirmative answer thereto; and (3) sustaining motion non obstante of Cleo Hamilton and rendering judgment in her favor on the contract phase of the litigation; the final decree reciting in such connection: "With respect to the cause of Norman Hamilton, Plaintiff vs. Cleo Mason Hamilton, Defendant, it appearing to the Court that the findings of the jury in answer to Special Issues No. Three and Four to the effect that William B. Hamilton and Mary Lou Mitchell Hamilton entered into an agreement on or about February 3, 1938, whereby they each agreed to will and bequeath their respective estates to Norman Hamilton and that Mary Lou Mitchell Hamilton kept and performed her agreement to execute such a will, were supported by the evidence but the Court further finds and concludes that Plaintiff, Norman Hamilton, by entering into and executing the partition agreement of the 1 day of *March, 1951, Exhibit P 33,* evidence in this cause estopped himself from asserting or making claim under the said contract between William B. Hamilton and Mary Lou Mitchell Hamilton or any trust arising therefrom, and that judgment non obstante veredicto in favor of said defendant in said cause should therefore be entered, * *."

The will of William B. Hamilton of February 3, 1938, pertinent here, appointed his son Norman as independent executor; further providing that his property should pass to his "heirs at law according to the Laws of Descent and Distribution of the State of Texas." The will of Mary Lou Hamilton, same date, also left the whole of her property to Norman Hamilton, naming him independent executor, etc.; and Mrs. Hamilton having become deceased on January 17, 1944, her will was duly probated; Norman Hamilton succeeding to her one-

half interest in the property constituting the community estate of William B. and Mary Lou Hamilton. On March 1, 1945 William B. Hamilton and Norman Hamilton entered into an agreement to operate in partnership these ranch and farm properties as to which each owned an undivided one-half interest; the arrangement being subject to dissolution at the desire of either partner. Thereafter on March 1, 1951 the jointly owned properties, known as "Hamilton Ranch," were partitioned at the instance of Mr. Hamilton, Sr. Extensive farm and ranch lands and equipment were involved, situated generally in Bosque and Dallas Counties; their division being evidenced by paragraphs 3 and 4 of the partition agreement, viz.: "(3) That William B. Hamilton is to have and take all of the lands aggregating approximately 746 acres situated in Dallas County, Texas, together with all improvements thereon, free and clear of all claims, rights and demands upon the part of the said Norman Hamilton. (4) That the said Norman Hamilton is to have and take all of the lands aggregating approximately 3,530 acres situated in Bosque County, Texas, together with all improvements thereon, free and clear of all rights, claims and demands upon the part of the said William B. Hamilton." Paragraph (5) required the execution of warranty deeds in confirmation of partition; the livestock, farm and ranch personalty, bank accounts, to be divided equally with specified exceptions.

In the late Thirties there were recurrences of estrangement between the elder Hamiltons; the Judge, as he was generally called, beginning a virtual residence at his Dallas County farm; and it was in such a background that much testimony was adduced relative to their execution of mutual wills. In such connection the following extracts from a voluminous record bear upon the jury's affirmative answer to Issue 3 that "on or about February 3, 1938, William B. Hamilton and Mary Lou Mitchell Hamilton entered into an agreement whereby they each agreed to will and bequeath their respective estates to Norman Hamilton." John D. Mitchell, brother-in-law,

testified to a conversation had with Judge Hamilton between March and May, 1938: "* * * He brought the subject up at that time, the fact that I had given her this advice to go ahead and get a divorce, and said he did not want a divorce and that she didn't want to get a divorce and that they wanted to keep their community property, he wanted to keep it together for the purpose of their son and had made a will and he said he had made a will and she had made a will in which everything would be left to his son; * * *. All in the world he wanted to do was to leave his stuff to his son and that he and my sister had agreed that they would both make wills and she stated that she had hers in—written in longhand—in her desk upstairs in her bedroom and he stated that he had written his will and it was in his office safe at his office and those wills would never be changed and they would leave everything to their son, if she would not sue him for a divorce and not have a division of the property. * * *." Clydie May Johnson testified: "That is when he told me about his part of the will, that he wanted Mr. Norman, at his death, to have the rest of the property, about the will, and he told me—he asked me—he asked me if I had seen her will and the will that she had made, and I told him I had. And he told me that is the way they made it out together and that he wanted Mr. Norman to have his half on his death, too. Q. What did he say—anything else to you at that time? A. Well, he said he wanted me to understand that he loved her and didn't want any divorce or anything and that is the way that they had agreed, to make out that will that way, because he wanted me to understand he didn't want any divorce, and he agreed —they both agreed to make out that will that way; that is what he told me. Q. Did he cry? A. Yes; he did." Mrs. Dallas Rupe testified to an incident that occurred at the Hamilton Swiss Avenue home when Mary Lou was having her picture taken; that the Judge came in, placed his arm on Mrs. Hamilton, saying: "Well, Susie, we have our wills together, and we share alike and for our son—everything is for our son and my two grandchildren."

Mrs. John D. Mitchell related a statement made by Mrs. Hamilton to the effect that she was not going to get a divorce because "their wills would take care of Norman, and that was where she was mostly concerned."

It should here be noted that the 1938 wills of the elder Hamiltons to which above testimony had reference, made Norman the sole beneficiary of their estates; in one case by name and in the other as being sole heir under the laws of descent and distribution; that at time of these original wills, their contents related to all the community property of William B. and Mary Lou Hamilton, continuing so until her death; and that upon probate of his mother's will, Norman Hamilton succeeded to an undivided one-half interest in the aforesaid community estate. Also that above testimony without more (as found by the trial court) constituted sufficient support for the jury answers to issues 3 and 4 to effect that William B. and Mary Lou Hamilton had entered into an agreement on or about February 3, 1938, to will and bequeath to Norman their respective estates and that Mrs. Hamilton had kept and performed her agreement. Consideration sufficient for this agreement to make common disposition of property by will may be found in their exchange of promises, aside from the forbearance on part of Mrs. Hamilton in the matter of divorce proceedings. "It is not necessary, in order to constitute sufficient consideration for an agreement to make mutual wills, that any benefit shall result therefrom to any of the testators, or the survivor of them. So it is ordinarily held that not only reciprocal devises or bequests by the parties to each other, or forbearance by one of the parties to assert a claim against the other, in return for the latter's agreement to make reciprocal wills, but also a promise by one party to make a certain disposition of his property, even for the benefit of a third person, in return for a like promise by another to make a certain disposition of his property, is a valid consideration, and the general rule has been laid down that the making by two or more persons of wills

disposing of their respective estates in a different way than they might otherwise dispose of them, but for the wills of the others, constitutes sufficient consideration to each for the agreement and provides a contractual basis for the wills." 69 C.J., Consideration, sec. 2723; see also Sample v. Butler University, 211 Ind. 122, 4 N.E.2d 545, 5 N.E.2d 888, 108 A.L.R. 857; 69 A.L.R., page 57; Larrabee v. Porter, Tex. Civ.App., 166 S.W. 395 (writ ref.).

██ The trial court has found that appellant is estopped and precluded "from asserting or making claim under the said contract between William B. Hamilton and Mary Lou Mitchell Hamilton or any trust arising therefrom * * *." We find no basis for the conclusion just quoted. On the other hand, effect should have been given to the jury verdict in response to issues 3 and 4. In the first place, appellee did not plead estoppel nor in any wise raise such defense until filing of motion for new trial. Rule 94, T.R.C.P. Secondly, and to the merits, it must again be noted (a) that under this contract between the parents of Norman Hamilton the claim is not made that William B. Hamilton during his lifetime held any of the property in trust for appellant; being merely bound to leave to Norman whatsoever property he might own at death. And thus the father was entirely free during lifetime to dispose of his community one-half in any way he saw fit without violation of the marital agreement. This is so, because only after the death of this testator could the rights of Norman Hamilton attach to any identifiable property; and (b) the instrument of partition on its face covered no more than the present undivided interests of the respective parties, and nowhere in the record is any indication that either of the parties thereto ever discussed or had in mind the contract between William B. and Mary Lou Hamilton; or that any inchoate interest of Norman Hamilton was involved in the partition; i. e., rights contingent upon his father's death.[1]

In Pool v. Sneed, Tex.Civ.App., 173 S.W.2d 768 (writ ref.), 779, resolving a similar issue, the Court goes on to say: "Therefore, under the evidence and findings of the jury, by which we are bound, we must conclude that the deed in question was not one of settlement of a contingent future interest, but merely one of partition which did not invest J. T. Sneed, Jr. with any new title. (Citing authorities.)" In Chace v. Gregg, 88 Tex. 552, 32 S.W. 520, 522, on the same subject it is stated: "A partition between joint owners does not confer title upon either, but has the effect only to dissolve the tenancy in common, and leave the title as it was before, except to locate such rights as the parties may have, respectively, in the distinct parts of the premises, and to extinguish such rights in all other portions of that property." See also in 32 Tex.Jur., pp. 146, 147, bearing on effect of partition, where the editor concludes that: "While a partitioning of property vests in each of the parties thereto the full and exclusive ownership of the particular tract which has been set aside or allotted to him, the transaction is deemed not to operate as a conveyance or transfer of title. 'The partition is of the possession, and not of the title'. The result is to vest the 'equitable title' of the respective shares in the several owners to whom allotments are made, 'the legal title remaining as before.' * * * Inasmuch as a partition by agreement has not the characteristics of a conveyance, it cannot be held to pass an after-acquired title."

In the very recent appeal of McConnell v. Corgey, Tex.Sup., 262 S.W.2d 944, our Supreme Court held that a property settlement agreement did not include the property there sought to be inherited by respondent, McConnell having died prior to trial

---

1. If Norman Hamilton had not acceded to his father's desire for a partition of the property, he could have been compelled to do so by law; Art. 6082, Vernon's Ann.Civ.St., providing therefor at instance of any joint owner. As argued by appellant, if a partition may be compelled by court action, surely it cannot be contended that an estoppel to assert his contract rights arose perforce of a voluntary partition.

of the divorce action. The principles announced in Clark v. Gauntt, 138 Tex. 558, 161 S.W.2d 270, were accordingly applied by Associate Justice Smith and are equally relevant here: "In that case the property covered by the deed of trust was described as 'all my right, title and interest' in two tracts of land. The party who executed the deed of trust owned an undivided one-half interest in the land at the time the instrument was executed. Later, her father died and she inherited the other one-half interest in the property. It was asserted in that case that the half interest inherited from the father should be covered by the deed of trust. The doctrine of after-acquired title was the basis for the claim. The court refused to sustain this contention, holding that the maker of the instrument had no interest in the property since the father was still alive at the time the deed of trust was executed, and, therefore, 'she had only an expectancy of inheritance'." [262 S.W.2d 946.]

■ It follows that there is no inconsistency in the rights now asserted by appellant and those concluded by his agreement for partition; the purpose of estoppel being to prevent inconsistencies and fraud resulting in injustice. 31 C.J.S., Estoppel, § 1, p. 192; Smith v. Chipley, Tex.Civ.App., 42 S.W.2d 645; Linz v. Eastland County, Tex.Com.App., 39 S.W.2d 599, 77 A.L.R. 1466; Kirby v. Fitzgerald, 126 Tex. 411, 89 S.W.2d 408. And the trial court should have followed the jury findings on issues 3 and 4, with rendition favorable to appellant as indicated by that fact finding body.

■ Appellee moves to dismiss this appeal on the contract phase of the litigation; severed, as already stated, on motion for new trial, and this, despite a judgment in her favor. Said motion to dismiss centers upon the prior consolidation of the two causes by agreement and approved by the court. Appellee's bill of exceptions to the court's order of severance discloses her protest thereto in view of the earlier consolidation by agreement. Appellee's motion takes as a postulate that there can be but one final judgment in this, a single consolidated suit, as illustrated in Texas Cities Gas Co. v. Dickens, Tex.Civ.App., 133 S.W. 2d 810, 812, where the trial court properly held that: "A trial court is not authorized, over the objection of any of the interested parties, to split a single cause of action into two or more parts. 1 Tex.Jur. sec. 53, pp. 670–671." But the principle has no application to cases originally filed as separate actions; the issues in each remaining separate and distinct even upon trial, as is clearly demonstrated here. Under Rule 174, T.R.C.P., both the matter of consolidation and severance of causes are for determination by the trial court in the exercise of a sound discretion. The error for which new trial was granted related solely to the will contest, and with showing of no prejudice to appellee, it would appear that Judge Peurifoy wisely ordered a separation of trials on issues undoubtedly determinative of the entire litigation. Meridith v. Massie, Tex.Civ.App., 173 S.W.2d 799; Paul v. Houston Oil Co. of Texas, Tex.Civ.App., 211 S.W.2d 345. "The trial court is vested with a broad discretion in regard to the consolidation and severance of claims. Rule 174, Rules of Civil Procedure, provides that 'The court in furtherance of convenience * * * may order a separate trial of any claim * * *.' The exercise of this power of severance is not precluded by the fact that special issues affecting the several claims involved have been submitted to the jury. The severance of distinct and separate claims does not amount to a trial of the case by piecemeal." Associated Growers v. Smith, Tex. Civ.App., 244 S.W.2d 348, 349.

Consistent with our conclusions hereinabove reached, the court's reformed judgment non obstante veredicto of date May 26, 1953, is hereby reversed and judgment rendered for appellant in accordance with the jury answers to issues 3 and 4 of Cause No. 58,779–C/D as consolidated with Cause No. 59,697–D; the severance of actions after jury trial constituting a proper basis for this appeal.

Reversed and rendered.

498

CRAMER, J., not sitting.

On Motion for Rehearing

Several inaccuracies appear in original opinion that are hereby corrected; not affecting, however, the result: (1) On page four [269 S.W.2d 494], the language to effect that motion non obstante of Cleo Hamilton was sustained is withdrawn. Said judgment non obstante in favor of appellee was consequent upon the court's own conclusion of law, grounded on estoppel, as shown in quoted recitals of the "reformed judgment". (2) It is disputed that the 1951 partition (though voluntary) "was at the instance of W. B. Hamilton." (3) The related conversation of Mrs. John D. Mitchell with Mary Lou Hamilton was indeed excluded by the court upon objection, and is expressly deleted from the opinion. Otherwise, said motion for rehearing is in all respects overruled.