Anna WILCOXEN, Charles Robert Wilcoxen, and Joseph Franklin Wilcoxen, Co-Executors of the Estate of Charles H. Wilcoxen, Deceased,

and

Anna Wilcoxen, Charles Robert Wilcoxen, and Betty Alice Gibson, Individually, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. W-3937.

United States District Court, D. Kansas.

Aug. 1, 1969.

Williams, Larson, Voss & Strobel, Dodge City, Kan., for plaintiffs.

Darrell D. Hallett, Tax Division, U. S. Dept. of Justice, Washington, D. C., and Bernard V. Borst, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM OPINION

### WESLEY E. BROWN, District Judge.

This is an action to recover additional estate taxes assessed against the Estate of Charles H. Wilcoxen, deceased, after certain claimed marital deductions were disallowed by the government. The plaintiffs named above are co-executors under the will of the deceased, and individually, they are all of the devisees and legatees under his will. Anna Wilcoxen is the surviving spouse of the decedent.

This case has been submitted to the Court upon an agreed statement of facts, exhibits and briefs. The sole issue is one of law, the question being whether plaintiffs are entitled to a marital deduction under 26 U.S.C. § 2056 by reason of Anna's interest in certain Colorado real estate. More specifically, the question is whether her present interest in the land is attributable to a deed creating a joint-tenancy, or whether title was derived under her husband's will, which created a life estate in the Colorado property.

■ If Anna received her interest under the will, then the value of her interest does not qualify for the marital deduction provided in § 2056(a), Internal Revenue Code of 1954, 26 U.S.C. § 2056 since a life estate is a "terminable interest" within the meaning of § 2056(b), Treasury Regulation, Estate Tax (1954 Code) § 20.2056(b)–1. On the other hand, if the property passed to her as a surviving joint tenant, her interest qualifies for the marital deduction under § 2056(e) (5).[1] United States v. Spicer, (10th Cir. 1964) 332 F.2d 750.

---

1. § 2056. *Bequests, etc.; to surviving spouse.*

(a) *Allowance of marital deduction.*— For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) *Limitation in the case of life estate or other terminable interest.*—

(1) *General rule.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed * * * from the decedent to any person other than such surviving spouse * * *; and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse:

* * * * *

(e) *Definition.*—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

(1) such interest is bequeathed or devised to such person by the decedent;

(2) such interest is inherited by such person from the decedent;

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

* * * * *

(5) such interest was, at the time of the decedent's death, held by such person and the decedent * * * in

**1008**

## FINDINGS OF FACT

The pertinent facts, which are not in dispute, are as follows:

Prior to October 25, 1954, Charles H. Wilcoxen and his wife, Anna, owned various parcels of real property in the states of Kansas and Colorado, as joint tenants, with right of survivorship. On October 25, 1954, Wilcoxen, a citizen of Kansas and resident of Dodge City, executed a will giving to Anna life estates in specifically described properties, including real property located in Prowers and Kiowa Counties, Colorado, with remainder over to certain named children. Concurrent with the execution of the will, Anna executed a "Consent", approving its contents. [Ex. A., Pre-trial Order]. This Consent appeared at the bottom of the last page of the will, and was a part of that instrument. It provided:

### "CONSENT TO AND APPROVAL OF WILL

I, Anna Wilcoxen, the wife of Charles H. Wilcoxen, having read and being familiar with the contents, terms and conditions of the foregoing Last Will and Testament of said Charles H. Wilcoxen, executed by him on the 25th day of October, 1954, and being fully informed of my proper rights, my right to inherit one-half of the property of my said husband, family allowance and all other legal rights, hereby state that the said Last Will and Testament

is made with my full knowledge and consent, and I hereby accept and approve the same."

By Codicil of March 21, 1967, Wilcoxen added specific parcels of land to the 1954 Will, including additional lands in Colorado, and again, Anna executed a consent to, and approval of, the codicil. As life tenant in the described parcels, Anna had the power to grant leases for oil, gas or other mineral purposes for terms beyond her lifetime, and to receive royalties and rentals from the same during her life, but she had no other power or authority to dispose of her limited life estates. Apart from the life estates created in the described property, all the residue of real and personal property was devised to Anna, absolutely upon the condition that she accept the limited estates created in other portions of the will.

The Colorado property in question was not sold or otherwise disposed of during the lifetime of Charles H. Wilcoxen. After his death, on September 6, 1963, the will was admitted to probate in Ford County, Kansas, and the probate court subsequently entered a final decree on February 15, 1966, assigning title to all Kansas property pursuant to the terms of the will.[2] The Kansas court made no assignment or disposition of the Colorado real estate.[3]

On May 4, 1965, Wilcoxen's Kansas will was admitted to probate in the District Court of Prowers County, Colorado.

joint ownership with the right of survivorship: * * * "
Treasury Regulation on Estate Tax, § 20.2056(b)–1, provides:
"(b) 'Terminable interests.' A 'terminable interest' in property is an interest which will terminate or fail on the lapse of time or on the occurrence or the failure to occur of some contingency. Life estates, terms for years, annuities, patents and copyrights are therefore terminable interests * * * "

2. In accordance with the will, 3 parcels in Ford County were assigned to Anna as a life estate, with remainder to a son, Charles; 3 parcels in Ford County were assigned to Anna as a life estate, with

remainder to a son, Joseph; 2 parcels in Ford County, and 1 parcel in Meade County were assigned to Anna as a life estate, with remainder to a daughter Betty; and undivided interests in mineral lands in Barber and Hamilton Counties, and all other real estate and personal property, were assigned to Anna, absolutely.

3. With reference to this land, the Court stated: "The Court further finds that the decedent owned certain real property in Colorado over which this Court has no jurisdiction, but that an ancillary proceeding has been filed and concluded in the State of Colorado."

The Order recited that the decedent was not a resident of the State of Colorado, and that at the time of his death, he owned real properties in the Counties of Prowers and Kiowa, Colorado. On May 19, 1965, Releases of Inheritance Tax Liens were obtained by plaintiffs from the Inheritance Tax Division of the State of Colorado.

A Federal Estate Tax return was filed on behalf of the estate and taxes shown there were paid. Thereafter, the Commission determined that additional taxes were due, and the same were assessed and paid. Plaintiff claims they are entitled to a refund of $45,224.07 on account of the wrongful disallowance of marital deductions.

At the time of Wilcoxen's death, and at all times pertinent to this lawsuit, the State of Colorado had a statute which regulated disposition of joint tenancy property by will. Section 153–15–1, Colo. Stat.Anno. provides:

"*Will not to affect joint tenancy in realty.*—No will, codicil or other testamentary disposition or testamentary provision *of one of the owners in joint tenancy of real estate* or of an interest in real estate shall destroy or affect the joint tenancy or prevent the entire title and interest owned by the joint tenants from becoming vested upon his death in the joint tenant or joint tenants who shall have survived him. Upon the death of an owner in joint tenancy of real estate or of an interest in real estate, leaving surviving him co-owners under such joint tenancy, all of the interest and title which, immediately before such death was owned by all of the joint tenants under such joint tenancy, shall become vested in the survivors of such joint tenants in spite of and without regard to the provisions of a will or codicil of the joint tenant so dying or the admission to probate of such will or codicil and without regard to whether such will or codicil was executed before or after the creation of the joint tenancy. [Emphasis supplied.]

## CONCLUSIONS OF LAW

Plaintiffs contend that C.S.A. § 153–15–1, *supra*, prohibits the termination of a joint-tenancy by will, and therefore Anna succeeded to her interest in the Colorado land by survivorship as a joint tenant, and not by operation of her husband's will. The government contends that the Colorado statute did nothing more than codify the general common law rule which is prevalent in other jurisdictions to the effect that one joint tenant, by an attempted devise of his interest, can not destroy the right of a surviving joint tenant to receive the entire estate upon his joint tenant's death. See 20 Am.Jur.2d Cotenancy and Joint Ownership, § 3, p. 95. The parties have been unable to cite, and this Court has been unable to find, any Colorado case construing the provisions of the statute in question. The parties do seem to agree that in 1938, the Supreme Court of Colorado overlooked the common-law rule, in Liden's Estate v. Foster, 103 Colo. 58, 82 P.2d 775, and § 153–15–1 was enacted to negate this holding.

In *Liden* a husband and wife entered into a trust agreement with county officials whereby they conveyed their interests in real estate and stock certificates to the county in return for county support. In the contract, it was recited that the husband owned the real estate and a certain number of stock certificates, and that the wife owned 13 shares of stock as her property. In fact, the stock certificates were in joint names, although the real estate appears to have been recorded in the husband's name alone. The contract provided that if one died, all rights under the Trust Agreement would go to the survivor, and that if both died, the property would be held in trust for their heirs or devisees, according to their respective interests. The husband died first, leaving a will devising all of his property to the Red Cross. The administrator of the wife's estate claimed all of the property, relying on joint-tenancy and right of survivorship, under the Trust Agreement. The

Court first ruled that the Agreement made with the County was insufficient to establish a joint tenancy and secondly, that even if it had, the tenancy was destroyed by the husband's will. At p. 778 of 82 P.2d 775, the Court stated:

"An instrument creating a joint tenancy speaks as of the time of the execution of that instrument. A will speaks as of the time of death, therefore, it must follow that if a will creates a situation inconsistent with a joint tenancy, the will must control."

The Court further remarked upon the fact that the husband's will was inconsistent with a joint tenancy, and that the wife, who died without electing to take against the will, consented to it.

■ While one joint tenant may not unilaterally terminate the interest of the other,[4] it appears to be unquestioned that under the general rule, a joint tenancy may be terminated by a contract, or mutual agreement among the tenants. See 20 Am.Jur.2d Cotenancy and Joint Ownership, § 19, p. 112; Anno. Joint Tenancy—Termination, 64 A.L.R.2d 918, 941–949. Such agreement may be made by express stipulation, or it may be implied from the circumstances which are inconsistent with the incidents of joint tenancy. This is the rule in Kansas, as exemplified in In Re Estate of Rooney (1957) 181 Kan. 1029, 317 P.2d 416; Berry v. Berry (1949) 168 Kan. 253, 212 P.2d 283, and see United States v. Spicer (10th Cir. 1964) 332 F.2d 750 (applying Kansas law). In *Berry* the Court found that a joint and mutual will terminated the joint tenancy, and that under the will, the wife had only a life estate. In *Rooney*, the wife signed a consent to her husband's will which conveyed joint property to a nephew. The consent there was more limited that that signed by Anna Wilcoxen. After the husband's death, the wife attempted to restrict her con-

sent to her statutory right to one-half of her husband's estate, but the Court found that she had knowingly consented to her husband's will, that this consent qualified the general rule which would prohibit a joint tenant from devising an interest in a joint tenancy, and that the consent was binding in all respects. In the *Spicer* case, which involved a claimed marital deduction, the Court of Appeals recognized the Kansas law which provided that joint wills could extinguish the tenancy, although under the facts of that case, the court found that the tenancy had not in fact been extinguished since under the will the wife retained full power to dispose of the estate.

■ After fully considering the language of C.S.A. § 153–15–1, the Court is of the opinion, and so concludes that the statute prohibits the disposition by Will of an interest in a joint tenancy by *one* of the joint tenants, without the knowledge or consent of the other. In this respect, the Court concludes that the Colorado statute merely codifies the common law rule, as applied in other jurisdictions.

■ The Court further concludes that C.S.A. § 153–15–1 does not prohibit the termination of a joint tenancy by mutual agreement, contract, or consent of all joint tenants.

■■ Thus, the remaining question to be determined is whether or not Anna Wilcoxen consented and agreed to terminate the joint tenancy. This being a Kansas will, executed by a citizen and resident of the State of Kansas, in Kansas, the law of the State will apply in determining the nature of Anna's Consent, and the intent of the parties. See United States v. Spicer, *supra*, 332 F.2d at 753. The evidence discloses that Wilcoxen's disposal of the Colorado land in question was wholly inconsistent with

---

4. But see, Alden v. Alden (1964) 155 Colo. 51, 393 P.2d 5, where the Colorado Supreme Court held that the wife, by unilateral action during the pendency of a divorce, had destroyed a joint tenancy by conveyance of her interest in the property to a third person, who later re-conveyed the property to her, and that the parties' interests were converted to that of tenants in common.

the continuation of the joint estate. Anna's life estate was extremely, and specifically limited—she had no power to dispose of the fee, and her sole right in the properties was to be enjoyment during her lifetime, of whatever rents and profits might be derived from oil and gas leases. In this respect, the Wilcoxen will is readily distinguishable from the wills in question in McLean v. United States (E.D.Mich.1963), 224 F.Supp. 726 and Awtry's Estate v. Commissioner of Internal Revenue (8th Cir. 1955) 221 F.2d 749, cases relied on by plaintiffs. The facts in those cases disclose that the joint tenancy had not in fact been disturbed, for the wife retained all rights in the property which she enjoyed under the joint tenancy. And see, United States v. Ford (8th Cir. 1967) 377 F.2d 93; In Re Estate of Wade (Kan.1969) 202 Kan. 380, 449 P.2d 488.

Here, there is no evidence, and no contention that the Consent executed by Anna Wilcoxen was not freely and knowingly given. This Consent was broader in terms and more inclusive than the consent given in the Estate of Rooney, discussed *supra*, 181 Kan. 1029, 317 P.2d 416, in that Anna stated that she had been informed of her "proper rights, my right to inherit one-half of the property of my said husband, family allowance and all other legal rights", whereupon she stated that the Will was made with her "full knowledge and consent." By this Consent she expressly agreed to termination of the tenancy in the described parcels of land.

We are of the opinion and therefore conclude that, (1) the joint tenancy between Charles Robert Wilcoxen and his wife, Anna, in the Colorado lands in question, was severed and terminated by the will and codicil of Charles Robert Wilcoxen, and by mutual agreement of the parties; (2) Anna Wilcoxen's present interest and title in the land is that conveyed by the Will, and is a life estate, subject to the terms of that Will; and (3) there being a terminable interest, plaintiffs are not entitled to a marital deduction for the life estates under 26 U.S.C. § 2056.

The Clerk of this Court is hereby ordered to enter judgment in favor of the defendant, the United States of America, with costs to be taxed to plaintiffs.