IN THE MATTER OF THE ESTATE OF LENA N. MALONEY, DECEASED.
ESTATE OF LENA N. MALONEY, DECEASED: EVERETT R. JONES,
EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF LENA
N. MALONEY, DECEASED: MARILYN GAFF, MARY ELLEN MCCORMICK,
BONNIE BENWARD AND JOHN BENWARD, BENEFICIARIES UNDER THE
LAST WILL AND TESTAMENT OF LENA N. MALONEY, DECEASED v.
BETTY ANN CARSTEN, ROSE MAHER, JEAN GUMP, RICHARD MALONEY,
SHARON WOOD, BARBARA LOWE, MARY JOSINE ZIMMER, JOSETTE
MARIE CONCANNON, JOCILLE BEANER, JONITA ANN GRAWCOCK,
JO CLARE MOODY, MIKE MALONEY, NICK MALONEY, DONALD MALONEY,
RONALD MALONEY AND ANNA MARIE MALONEY

[No. 3-1075A231. Filed October 31, 1978. Rehearing denied December 15, 1978.
Transfer denied July 9, 1979.]

---

*John J. Whiteleather, Sr., Whiteleather & Whiteleather, Benton E. Gates, Sr., James R. Heuer, Gates, Gates & McNagny*, of Columbia City, for appellants.

*James R. Fleck, John S. Bloom, Bloom, Bloom & Fleck,* of Columbia City, for appellees.

STATON, J. — In 1951, John F. and Lena N. Maloney, as husband and wife, executed an instrument captioned "Joint Last Will and Testament." John died in 1955 and that instrument was probated shortly thereafter. In 1972, Lena executed yet another instrument entitled "Last Will and Testament." Following Lena's death in 1973, the second will was admitted to probate. Carsten et al. ("the claimants") filed a claim against Lena's estate contending that they were entitled to a portion of her estate as descendants of certain beneficiaries named in the joint will. The trial court found in favor of the claimants and imposed a constructive trust on one-half of Lena's estate for their benefit.

In his appeal to this Court, the executor of Lena's estate contends that the trial court erred in:

(1)  its determination as to the nature and the effect to be given the purported joint will;

(2)  failing to conclude that certain legacies had lapsed;

(3)  imposing a trust on property acquired by Lena after the purported joint will was executed; and

(4)  ordering the disposition of property acquired by Lena by operation of law.

We affirm.

I.

Nature and Effect of 1951 Will

The instrument executed by the Maloneys in 1951 reads as follows:

"JOINT LAST WILL AND TESTAMENT OF JOHN F. MALONEY AND LENA N. MALONEY, HUSBAND AND WIFE

"We, John F. Maloney and Lena N. Maloney, husband and wife, of Churubusco, Whitley County, Indiana, desiring to protect each other in the disposition of our property and desiring to make final disposition thereof upon the death of the survivor of us, do now make, publish, acknowledge, and declare this to be our joint last Will and Testament.

## "Item One

"It is our desire and will that the just and legal indebtedness of each of us shall be paid as soon as possible after our decease by our executor hereinafter named. At the death of the survivor of us, we give and bequeath the sum of Five Hundred Dollars ($500.00) for Masses for ourselves to Ege Catholic Church, Ege, Indiana.

## "Item Two

"We each give and bequeath unto the survivor of us all personal property of every description of which we may be possessed or the owner at the time of our death.

## "Item Three

"The real estate of which we or either of us may die seized or acquire, we give, devise and bequeath unto the survivor of us for and during the period of the natural life of such survivor. At this time we are both of the opinion that it would be to the best interests of the survivor of us to keep our real estate but on account of illness or from some other unforeseen cause it would be necessary for the comfort, happiness, and best interest of the survivor to sell our real estate or a portion thereof, they may do so.

## "Item Four

"Subject to Items One, Two, and Three, of this our joint last Will and Testament, we give, devise, and bequeath all our property both real and personal a one-half share thereof to the relatives of John F. Maloney hereinafternamed; and a one-half share thereof to the relatives of Lena N. Maloney hereinafter named: that is to say:

"William C. Maloney brother of John F. Maloney shall receive 50 per cent of said one-half share.

"Theron Grawcock and Oscar Joe Grawcock nephews of the testator, John F. Maloney, shall receive 25 percent each, of said undivided one-half share.

"Robert Benward and Clarence Benward brothers of the testatrix, Lena N. Maloney shall take equal shares of 75 per cent of said one-half share.

"Mary Ellen McCormick niece of the testatrix, Lena N. Maloney, shall take 25 percent of said one-half share of said estate. Should Mary Ellen McCormick die without children

then her share in our estate shall go to Robert Benward and Clarence Benward in equal shares.

"Item Five

"On the death of either of us, it is our will that the survivor act as executor or executrix of our estate. Provided, however, that on the death of the survivor, it is our desire and request that Churubusco State Bank, Churubusco, Indiana act as executor of our estate.

"In Witness Whereof, we have hereunto subscribed our names and seals, this 13th day of July, 1951."

The instrument executed by Lena in 1972 disposes of her estate in a manner substantially different than that set forth in the instrument executed by her in 1951.

The parties disagree as to the nature of and the effect to be given the purported joint will. The executor contends that the will is not a joint will and was revoked and rendered meaningless by Lena's execution of the 1972 will. The claimants, on the other hand, contend that the purported joint will is, in fact, a valid joint will which was executed pursuant to an agreement not to revoke. Upon John's death, the claimants continue, Lena became bound by the terms of that agreement.

The executor's contention that the purported joint will is not a joint will at all but is merely John's will is without merit. A joint will has been defined as "a single testamentary instrument that embodies the testamentary plan of two or more persons and is separately executed by each of the testators using the instrument." Bowe-Parker, 1 Page on Wills 551 (1960). Here, the document purports to be a joint will by the declarations made in the heading and in the preamble of the document. It disposes of the estate of the two parties who executed it by leaving the first decedent's property to the survivor and, upon the death of that survivor, the will formulates a final disposition of all assets owned by the survivor at his or her death. Finally, it is executed in proper form to be a testamentary instrument under Indiana law. The document is what it purports to be, a joint will.

It is essential, in order to properly determine the effect to be given the joint will, that we distinguish between the concept of wills and

the concept of contracts. The rather common expression that a joint will is, upon the death of one party to it, irrevocable by the survivor is neither technically nor legally correct. A joint will, like any other will, is revoked by the execution of a subsequent will which is inconsistent therewith. *Manrow v. Deveney* (1941), 109 Ind.App. 264, 33 N.E.2d 371. This is so even though the joint will was executed in accordance with an agreement that it should not be revoked and even though one of the parties to the joint will has died. Equity will, however, in such instances, enforce the agreement not to revoke by imposing a constructive trust upon the property involved in favor of the beneficiaries under the joint will. *Sample v. Butler University* (1936), 211 Ind. 122, 4 N.E.2d 545.

Was there an agreement between John and Lena not to revoke the joint will? No such express agreement is embodied on the face of the joint will. No such express agreement is embodied on the face of the joint will. However, the absence of express contractual language is not fatal to the claimants' ability to have a constructive trust imposed upon Lena's estate. It is a well-settled rule that the correct construction of a will is that which is consistent with the intent of the testator as it appears in the will. *Brown v. Union Trust Co. of Greensburg* (1951), 229 Ind. 404, 98 N.E.2d 901. Here, in the preamble to the will, John and Lena very clearly and unambiguously stated that their purpose in executing the joint will was "to protect each other in the disposition of our property" and "to make final disposition thereof upon the death of the survivor of us." Furthermore, the dispositive scheme is of note. Upon the death of the survivor, the estate is to be divided equally with one-half going to the family of each. It is evident, therefore, that there was, at the very least, an implied agreement not to revoke the will. Any other conclusion would be inconsistent with the intentions of the testators and the clearly-stated purpose for which the will was executed.

We are mindful that the burden of proving that a joint will was executed pursuant to a valid and enforceable agreement not to revoke is upon the party who is attempting to enforce the agreement. *Cramer v. Echelbarger* (1968), 142 Ind.App. 374, 234 N.E.2d 864. The claimants have met their burden.

The trial court properly gave effect to the pattern of testamentary disposition set forth in the joint will by imposing a constructive trust.[1]

## II.

### Lapse

The claimants are descendants of William Maloney and Oscar Joe Grawcock, both of whom are named as beneficiaries in the joint will and both of whom survived John but predeceased Lena. It is evident that had William and Oscar survived both John and Lena, they would have been entitled to maintain an action, as third party beneficiaries, to have the agreement not to revoke the joint will enforced. *Blackard v. Monarch's Manufacturers & Distrib., Inc.* (1960), 131 Ind.App. 514, 169 N.E.2d 735. The executor contends, however, that if the joint will had been admitted to probate as Lena's last will and testament, the bequests to William and Oscar would have failed because they predeceased Lena. Because those bequests would have lapsed, the executor continues, neither William nor Oscar nor the claimants would have inherited any property under the joint will. Thus the executor contends that the trial court erred in concluding that the claimants were third party beneficiaries of the agreement not to revoke and were entitled to have that agreement enforced.

Under the doctrine of lapse, a bequest to another fails when the devisee predeceases the testator. *Farmers & Merchants State Bank v. Feltis* (1971), 150 Ind.App. 284, 276 N.E.2d 204. In the event of such a lapse, the provision devising the property becomes a nullity and the property to be passed by that provision goes into the residuary estate, if there be one, and if not, then it passes by intestate succession. *Edwards v. Beard* (1922), 77 Ind.App. 478, 134 N.E. 203.

Indiana has enacted an "anti-lapse" statute, IC 1971, 29-1-6-1(g)(2),

---

1. The executor raises several issues concerning the admissibility of certain evidence which was offered by the claimants in support of their contention that John and Lena had made an agreement not to revoke the joint will. Because of our conclusion that the will itself discloses an implied agreement not to revoke, there is no need for us to discuss those issues. The error, if any, in admitting such evidence was harmless. Ind. Rules of Procedure, Trial Rule 61.

Ind.Ann.Stat., § 6-601(g)(2) (Burns 1953), which reads as follows:

"(2) Whenever any estate, real or personal, shall be devised to any descendant of the testator, and such devisee shall die during the lifetime of the testator, whether before or after the execution of the will, leaving a descendant who shall survive such testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee as if such devisee had survived the testator and died intestate. The word 'descendant' as used in this section shall include children adopted during minority by the testator and by his descendants and shall also include descendants of such adopted children. 'Descendant' shall also include illegitimate children of the mother, and shall also include illegitimate children of the father, if, but only if, such child's right to inherit from such father is, or has been, established in the manner provided in section 207 [29-1-2-7] of this [Probate] Code. This rule shall apply where the parent is a descendant of the testator as well as where the parent is the testator. Descendants of such illegitimate children shall also be included."

The claimants cannot avail themselves of the above-quoted provision, however, because neither William nor Oscar are "descendants" of John or Lena. Unless the claimants can come within one of the exceptions to the general lapse rule, the judgment of the trial court must be reversed.

The rationale for the doctrine of lapse is that a will by its very nature is ambulatory and does not become operative until the death of the testator and until that event, a legacy has never vested. *Feltis, supra.* After discussing the general rule, our Supreme Court, in *Ballard v. Camplin* (1903), 161 Ind. 16, 67 N.E. 505, noted that the rule is not applicable where there is a "contract or agreement controlling and binding upon the testator in respect to such legacy or devise."

When John died, Lena became contractually bound to comply with the pattern of testamentary disposition set forth in the joint will. Thus, although the joint will was revocable, and, in fact, was revoked, the bequests in that will were not "ambulatory" in nature.

The bequests to William and Oscar did not lapse and the trial court properly enforced the agreement not to revoke the will.

## III.

## After-Acquired Property

Lena inherited money from her brother in 1965, some fourteen years after the execution of the joint will and ten years after John's death. Additionally, she acquired an interest in certain real estate in 1966. The executor contends that the trial court erred in awarding the claimants an interest in the money and real estate.

The disposition of property acquired after the execution of a will is governed by IC 1971, 29-1-6-1(a), Ind.Ann.Stat. § 6-601(a) (Burns 1953), which provides:

"Rules for interpretation of wills.—In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

"(a) Any estate, right or interest in land or other things acquired by the testator after the making of his will shall pass thereby and in like manner as if title thereto was vested in him at the time of making the will."

Upon the death of the first testator, Item Two of the joint will clearly contemplates a transfer of all personal property to the survivor. Item Three provides that, upon the death of the first testator, any real estate of which that testator is seized shall pass to the survivor. Item Four then directs that all of the survivor's real and personal property be apportioned among the named beneficiaries at the survivor's death. No reservation is made for property, real or personal, acquired after the execution of the joint will.

Had the joint will been probated as Lena's last will, real and personal property acquired by Lena after the execution of the will and after John's death would have been distributed in accordance with its provisions. The trial court properly awarded the claimants an interest in the after-acquired property.

## IV.

## Jointly-Held Property

Most of the personal property owned by John and Lena was owned

by them as joint tenants with the right of survivorship. Similarly, at the time of the execution of the joint will, all of their real property was held by them as tenants by the entireties. The executor argues that because Lena took the title to that property by operation of law and not as a result of the will, she was not bound to dispose of the property pursuant to the terms of the will.

This particular issue was addressed and decided adversely to the position adopted by the executor in *Lawrence v. Ashba* (1945), 115 Ind.App. 485, 59 N.E.2d 568. In Item Four of the joint will, Lena did not agree to divide only the property she took under John's will among the respective families. The agreement was to divide all of the property she owned at death. The manner in which she became possessed of the property is not determinative of the manner in which she could dispose of it. The terms of the joint will dictated the property's ultimate disposition.

The judgment of the trial court is affirmed.

Chipman, J., (by designation), Concurs;

Hoffman, J., Concurs.

NOTE—Reported at 381 N.E.2d 1263.