ESTATE OF ROBERT H. STEWART, DECEASED, ROBERT E. STEWART
AND MARY JUNE STEWART ROBERTS, COEXECUTORS,
PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 11849–81, 11986–81.     Filed December 22, 1982.

*Lester M. Ponder, Robert S. Ashby, Michael R. Fruehwald,*
and *Don Hubert Wickens,* for the petitioners.
*Elsie Hall* and *Russell D. Pinkerton,* for the respondent.

OPINION

FAY, *Judge*: In these consolidated cases, respondent deter-
mined a deficiency of $97,871.17 in the Federal estate tax for
the Estate of Robert H. Stewart (Mr. Stewart), a deficiency of
$27,000.23 in Mr. Stewart's gift tax for the calendar quarter
ending December 31, 1976, and an addition to gift tax of
$6,750.06 under section 6651(a)(1).[1] After concessions, the
remaining issues are (1) whether Mr. Stewart transferred by
gift a one-half interest in certain real property to his children,
if so, (2) whether such gift was made in contemplation of death,

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect
during the taxable years in issue.

and (3) whether petitioners are liable for an addition to tax under section 6651(a)(1) for the failure of Mr. Stewart to file a gift tax return for the quarter ending December 31, 1976.

The facts have been fully stipulated and are so found. Petitioners Robert E. Stewart and Mary June Stewart Roberts are the duly appointed coexecutors of Mr. Stewart's estate. Robert E. Stewart was a resident of Hope, Ind., and Mary June Stewart Roberts was a resident of Princeton, N.J., when the petition was filed herein.

In 1974, Mr. Stewart and his wife, Edith C. Stewart (Mrs. Stewart), both were diagnosed as having cancer. On March 20, 1976, Mr. and Mrs. Stewart (herein sometimes collectively referred to as the Stewarts) executed a "Joint, Mutual and Contractual Last Will and Testament" (the joint will). In the joint will, the Stewarts mutually contracted that one-half of their interest in certain real property held as tenants by the entirety would pass to their children upon the death of the first spouse. Mrs. Stewart died on November 16, 1976, and the joint will was probated as her last will and testament by the Superior Court of Bartholomew County, Ind. (the Probate Court). The Probate Court approved a distribution of Mrs. Stewart's property as provided by the joint will, including a transfer of a one-half interest in the real property to the children. Mr. Stewart died on January 29, 1978, and the joint will was probated as his last will and testament, also.

Petitioners reported one-half of the value of the real property in Mr. Stewart's gross estate. In his notice of deficiency, respondent included in Mr. Stewart's gross estate the full value of the real property. In a separate notice of deficiency, respondent asserted liability in Mr. Stewart's gift tax for the quarter ending December 31, 1976, and an addition to gift tax under section 6651(a) for failure to file a gift tax return.

The issue is whether Mr. Stewart made a gift of a one-half interest in the real property to the children after the death of his wife, and if so, whether such gift was made in contemplation of death so as to bring such interest within his gross estate. See sec. 2035. Resolution of this issue depends upon whether the Stewarts' execution of the joint will converted the tenancies by the entirety into tenancies in common. If such conversion occurred, then Mrs. Stewart's interest in the real

property would have passed to the children under her will, rather than to Mr. Stewart by right of survivorship. In such case, Mr. Stewart could not have made a gift of such interest to the children. If no such conversion occurred, Mr. Stewart would have succeeded to Mrs. Stewart's interest in the real property, and, thus, could have made a gift of such interest to the children.

Petitioners argue the tenancies by the entirety were severed by execution of the joint will because it provided for disposition of the real property in a manner which was inconsistent with the Stewarts' rights of survivorship. Respondent asserts that under Indiana law, a tenancy by the entirety cannot be severed by the execution of a mutual will. Respondent argues in the alternative that even if a tenancy by the entirety can be severed by the execution of a mutual will, the execution of the joint will in this case did not sever the tenancies by the entirety because the joint will provided for a disposition of the real property in a manner which was not "inconsistent" with the Stewarts' rights of survivorship.

Whether the execution of a mutual will can sever a tenancy by the entirety is a question which must be analyzed under State law. The real property is located in Indiana; thus, the laws of Indiana are controlling. In the absence of a statute or decision by the Indiana Supreme Court, this Court must apply what it determines the law to be after giving proper consideration to rulings of lower Indiana courts. *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967).

Under Indiana law, a joint or mutual will operates as both a will and a contract. *Manrow v. Deveney*, 109 Ind. App. 264, 33 N.E.2d 371 (1941). The "will" is ambulatory and can be revoked by either testator acting alone, even though revocation would be a breach of the agreement; however, in the event of such revocation, the contract is enforceable. *Estate of Maloney v. Carsten*, 381 N.E.2d 1263 (Ind. Ct. App. 1978).

The parties have not cited any Indiana case or case arising under the laws of any other jurisdiction which has specifically ruled whether a tenancy by the entirety may be severed by the execution of a mutual will, nor has our research uncovered any such case. However, several cases have held that the

execution of a mutual will can operate to sever a joint tenancy.[2] For instance, in *In re Estate of Waks*, 386 So. 2d 307 (Fla. Ct. App. 1980), the court held that execution by a husband and wife of a mutual will providing for disposition of jointly owned property in a manner inconsistent with the rights of survivorship operated as a severance of the joint tenancies. Under the mutual will in *In re Estate of Waks*, the tenants agreed that the jointly owned property would pass to certain beneficiaries upon the death of the first spouse. Since jointly owned property otherwise passes automatically to the surviving spouse by right of survivorship, the court held that the joint tenancies had been severed by the execution of the mutual will. In so holding, the court carried out the tenants' intention by allowing the jointly owned property to pass to the named beneficiaries. In accord, *Wilcoxen v. United States*, 310 F. Supp. 1006 (D. Kan. 1969); *Lancellotti v. Lancellotti*, 119 R.I. 1184, 377 A.2d 1315 (1977); *Mamalis v. Bornovas*, 112 N.H. 423, 297 A.2d 660 (1972); *Berry v. Berry's Estate*, 168 Kan. 253, 212 P.2d 283 (1949). See also *McDonald v. Moreley*, 15 Cal. 2d 409, 101 P.2d 690 (1940), wherein the court determined that the execution of another kind of agreement operated to sever joint tenancies.

Asserting there are fundamental differences between joint tenancies and tenancies by the entirety, respondent argues that these cases are irrelevant. This Court, however, faced a similar argument in *Estate of Borner v. Commissioner*, 25 T.C. 584 (1955), and held that:

Differences do exist between the two estates but such differences are not sufficient to compel unlike tax results under the provisions of section 811(c) [the predecessor of section 2035]. The only difference is tenancy by the entireties is based on the ancient common law fiction that husband and wife are one, and the right of survivorship cannot be destroyed without mutual consent, while in a joint tenancy one tenant, by transferring, can destroy the

---

[2]The most important common characteristic of joint tenancies and tenancies by the entirety lies in the right of survivorship. When a tenant dies, his interest in property subject to the tenancy passes automatically to the surviving tenant. Among the differences between the estates are (1) a joint tenancy may exist between any number of people, whereas a tenancy by the entirety can exist only between a husband and wife, and (2) a joint tenant may at any time terminate the right of survivorship of the remaining joint tenants, whereas a tenant by the entirety, in general, cannot terminate unilaterally the other's right of survivorship during marriage. Joint tenancies exist in a majority of States. Tenancies by the entirety have been abolished in all but 21 States. See 4A R. Powell, Law of Real Property par. 620 (1981).

survivorship rights. *We conclude as a practical matter, the tenancy by entirety and joint tenancies are so much alike that the rule applied in the joint tenancy cases should be applied here where the tenancies are by the entirety* * * * [Borner v. Commissioner, supra at 588; emphasis added.]

Similarly, section 25.2515–1(a),[3] Gift Tax Regs., states: "An estate by the entirety in real property is essentially a joint tenancy between husband and wife with the right of survivorship." The conclusions therein suggest that generally tenancies by the entirety and joint tenancies should be treated alike when Federal tax consequences are at stake.[4]

Moreover, we find no convincing reason for distinguishing between the two types of estates for purposes of the issue before us. The characteristics which distinguish the estate by the entirety from a joint tenancy rest on the ancient common law fiction which regards husband and wife as one person. See *Sharp v. Baker*, 51 Ind. App. 547, 96 N.E. 627, 629 (1911). As a result, in an estate by the entirety there is unity of estate, unity of conveyance, unity of possession, and unity of control. See *Yarde v. Yarde*, 117 Ind. App. 277, 71 N.E.2d 625 (1947). However, to hold therefore that a husband and wife cannot by mutual agreement sever a tenancy by the entirety would add one more technicality to an estate already abolished in most jurisdictions because it is based on the outmoded concept of husband and wife as "one."[5]

Certainly the Probate Court did not find itself constrained by the technicalities of an estate by the entirety under Indiana law when it allowed Mrs. Stewart's interest in the real property to pass by devise to the children. By allowing such a distribution, the Probate Court implicitly accepted that the

---

[3]Sec. 2515 has been repealed for gifts made after Dec. 31, 1981.

[4]Sec. 25.2515–1(d)(2), Gift Tax Regs., states:

"a termination of a tenancy is effected when * * * the spouses through any form of conveyance or agreement become tenants in common of the property or otherwise alter the nature of their respective interests in the property formerly held by them as tenants by the entirety."

By this language, the regulations recognize that a tenancy by the entirety may be converted to a tenancy in common by agreement. Of course, resolution of this issue depends upon State law.

[5]The estate by the entirety has been abolished in all but 21 States. See note 2 *supra*. Several commentators have recommended a complete abolishment of the estate because it is based on the outmoded concept of husband and wife as "one." See 2 *American Law of Property* sec. 6.6, at 32 (1952).

tenancies by the entirety had been severed upon the Stewarts' execution of the joint will.[6]

Based on the foregoing, we find no reason why an estate by the entirety should be treated any differently than a joint tenancy. Accordingly, consistent with the *In re Estate of Waks* line of cases, we find that under Indiana law, a tenancy by the entirety can be severed by the execution of an "inconsistent" mutual will.[7]

Respondent relies on several cases wherein joint tenancies or tenancies by the entirety remained intact despite the execution of a mutual will. These cases are clearly distinguishable, however, because they involved mutual wills which provided for dispositions in ways which were essentially "consistent" with the tenants' rights of survivorship. See *Awtry's Estate v. Commissioner*, 221 F.2d 749 (8th Cir. 1955); *McLean v. United States*, 224 F. Supp. 726 (E.D. Mich. 1963); *Estate of Maloney v. Carsten*, 381 N.E.2d 1263 (Ind. Ct. App. 1978); *Lawrence v. Ashba*, 115 Ind. App. 485, 59 N.E.2d 568 (1945); *Sample v. Butler University*, 211 Ind. 122, 4 N.E.2d 545 (1936).[8] For instance, in *Awtry's Estate*, the mutual will stated that "the survivor of us shall have the full use and income and control of all our property as long as the survivor of us shall live." *Awtry's Estate v. Commissioner*, *supra* at 752. The will went on to provide that upon the death of the *survivor*, the

---

[6]We note the State of Indiana would have ultimately collected more inheritance taxes if Mrs. Stewart's interest in the real property had passed to Mr. Stewart by right of survivorship rather than to the children under Mrs. Stewart's will.

[7]Respondent cites a 1900 decision wherein the Indiana Supreme Court states:

"Joint tenants may sever and continue to hold their estates. The estate of husband and wife [estate by the entirety] is inseverable while it remains theirs. *Simons v. Bollinger*, 154 Ind. 83, 56 N.E. 23, 24 (1900)."

The only issue presented for decision in *Simons* was whether words employed in a deed created a joint tenancy or an estate by the entirety. Accordingly, the discussion therein regarding the severability of estates by the entirety was dicta and consequently, we place little significance on it, especially in light of the fact that the estate by the entirety is based on outdated concepts. See note 5 *supra*; *Sharp v. Baker*, 51 Ind. App. 547, 96 N.E. 627 (1911).

[8]In this connection, respondent also relies upon *Schildmeier v. United States*, 171 F. Supp. 328 (S.D. Ind. 1959), wherein a mutual will purported to control the disposition of property held in tenancies by the entirety in the event of the simultaneous death of the tenants. The court determined that the "simultaneous death" of the tenants was a condition precedent to the contract's becoming enforceable and thus held that the tenancies by the entirety were unaffected by such contract. *Schildmeier* is clearly distinguishable from the case before us because the enforceability of the joint will herein was not subject to any condition precedent. See note 13 *infra*.

property would go to certain beneficiaries. Similarly, in *Estate of Maloney*, the mutual will provided with respect to certain jointly held property that:

> At this time we are both of the opinion that it would be to the best interests of the survivor of us to keep our real estate but on account of illness or from some other unforeseen cause it would be necessary for the comfort, happiness, and best interest of the survivor to sell our real estate or a portion thereof, they may do so. [*Estate of Maloney v. Commissioner, supra* at 1266.]

Under these provisions, the surviving spouse was to receive essentially the same interest as he or she would otherwise succeed to by right of survivorship. In contrast, the mutual will in *In re Estate of Waks*, for instance, provided that the surviving spouse would not receive any interest in the jointly owned property. Accordingly, we find that the cases relied upon by respondent do not contradict our conclusion that joint tenancies and tenancies by the entirety can be severed by the execution of an "inconsistent" mutual will.[9]

Finally, respondent argues that even if it is determined that a tenancy by the entirety can be severed by the execution of a mutual will, the execution of the joint will in this case did not sever the tenancies by the entirety because the disposition of the real property under the joint will was not "inconsistent" with the Stewarts' rights of survivorship. We disagree.

Admittedly, there are contradictions in the terms of the joint will. On the one hand, it is clearly stated that a one-half interest in the real property shall go to the children on the death of the first spouse, but there is also language to the effect that the tenancies by the entirety shall not "dissolve" until the first of them dies.[10] Despite these contradictions,

---

[9]The decision in *Wilcoxen v. Commissioner*, 310 F. Supp. 1006 (D. Kan. 1969), highlights the distinction between the two lines of cases. In *Wilcoxen*, although the agreed disposition of the jointly held property was not to take place until the death of the *surviving* spouse, the surviving spouse's continuing interest in the property was to be severely limited; her sole right in such property was to enjoy during her lifetime the rents and profits derived therefrom. Thus, despite the surviving spouse's continuing interest in the property, the court in *Wilcoxen* held that the severe restrictions imposed upon the surviving spouse's interest were inconsistent with the tenants' rights of survivorship and, therefore, severed the joint tenancy. Significantly, we are not even faced with the closer question decided upon in *Wilcoxen*. As in *In re Estate of Waks*, 386 So. 2d 307 (Fla. Ct. App. 1980), the Stewarts agreed that the disposition of the real property would take place upon the death of the first spouse—clearly an "inconsistent" disposition. See text at notes 10—13 *infra*.

[10]The joint will provided in relevant part as follows:

however, it is clear the Stewarts contracted under the joint will that upon the death of the first of them, a one-half interest in the real property was to go immediately to the children. Such a disposition was totally inconsistent with their rights of survivorship. Furthermore, it is clear that the one-half interest in the real property was to pass under the will of the first to die rather than under any "fiction" of a gift.[11] There is no reference in the joint will to a "gift," nor is there a mechanism or time limit for the surviving spouse to transfer an interest in the real property to the children.[12] Accordingly, we find the joint will provided for a disposition of the real property in a manner which was inconsistent with the Stewarts' rights of survivorship.[13]

---

"*Item 6.* At the death of Edith C. Stewart, if she is then survived by Robert H. Stewart, one-half of the remaining real estate which she owns, including any real estate which she owns as a tenant by the entirety, shall pass and be then owned one-half (only) as a tenant in common by Robert H. Stewart, and the remaining one-half shall thereupon go in equal shares, one-half thereof to Robert E. Stewart, absolutely, and one-half thereof to Mary June Stewart Roberts, absolutely."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"*Item 9.* It is the intention and purpose of this instrument to sever any tenancy by entirety in which either of the makers of this will are involved and upon the death of either of them such tenancy shall be dissolved. It is also the contract and agreement of the makers of this will that neither one of them is authorized to make any change in this agreement, but the two of them together so long as they both live reserve the right to make such changes or to revoke this instrument by their joint action."

[11]Respondent argues that Mr. Stewart succeeded to Mrs. Stewart's interest in the real property by right of survivorship, and then a constructive trust was imposed on such interest in favor of the children to ensure that Mr. Stewart properly transferred it to the children pursuant to the joint will. Such a theory of "constructive trust" does exist under Indiana law. See *Sample v. Butler University*, 211 Ind. 122, 4 N.E. 2d 545 (1936); *Estate of Maloney v. Carsten*, 381 N.E.2d 1263 (Ind. Ct. App. 1978). However, it is unnecessary for us to consider such theory because of our conclusion herein that Mrs. Stewart held the real property as a tenant in common and, thus, the real property passed to the children directly under her will.

[12]To interpret the provisions in any other manner would clearly frustrate the Stewarts' obvious purpose in executing the joint will. Even respondent admits one of the Stewarts' primary reasons for executing the joint will was to equalize inclusion of the real property in their respective estates. The Stewarts could not have accomplished this objective, and still have retained full ownership of the property, unless the tenancies by the entirety were severed upon the execution of the joint will. The Stewarts' purpose in executing the joint will may be ascertained and taken into account in construing any ambiguities. See 17A C.J.S. *Contracts* sec. 295, at 65.

[13]Respondent also argues the contract did not become enforceable until the death of Mrs. Stewart and thus could not have had any effect on the tenancies by the entirety. We disagree. The death of one of the spouses was not a condition precedent to the enforceability of the contract. Of course, as with any agreement, until the death of one of them, the Stewarts could have modified or revoked the contract by mutual agreement. However, such a possibility does not render the contract unenforceable until one of them dies.

In summary, we find that under State law, a tenancy by the entirety, like a joint tenancy, is severed upon the execution of a joint or mutual will which provides for a disposition of property held in such tenancy in a manner which is inconsistent with the tenants' rights of survivorship. Since the joint will in this case provided for such inconsistent disposition, we find the tenancies by the entirety were severed upon execution of the joint will. Accordingly, upon such execution, Mrs. Stewart held an undivided one-half interest in the real property as a tenant in common. Upon her death, such interest did not pass to Mr. Stewart under any right of survivorship, but rather, passed directly to the children. Thus, Mr. Stewart made no gift of such interest in the real property to the children.[14]

To reflect concessions and the foregoing,

*Decisions will be entered under Rule 155.*

---

[14]The conversion of a tenancy by the entirety into a tenancy in common can have gift tax consequences. See sec. 2515. However, respondent makes no claim that there was a gift on the basis of such transaction and, therefore, it is not necessary for us to decide if there was such a gift. See also sec. 6214.