ESTATE OF PETER A. GASSER, DECEASED, VERNICE H. GASSER, EXECUTRIX, AND VERNICE H. GASSER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

VERNICE H. GASSER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 43573-86, 43574-86.     Filed August 16, 1989.

*Julian N. Stern,* for the petitioners.
*Neal O. Abreu, Theodore Garelis,* and *Kathryn Vetter,* for the respondent.

OPINION

DRENNEN, *Judge:* [1] In statutory notices of deficiency issued to petitioners in these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax as follows:

---

[1]This case was assigned and deemed submitted to Judge Drennen by order dated Apr. 10, 1989.

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| Estate of Peter A. Gasser, Deceased, Vernice H. Gasser, Executrix, and Vernice H. Gasser | 43573-86 | 1982 | $15,998 |
| Vernice H. Gasser | 43574-86 | 1980 | $53,048 |

After concessions, the sole issue for our decision is whether petitioners are entitled to Accelerated Cost Recovery System (ACRS) depreciation deductions, section 168,[2] with respect to a surviving spouse's share of community property which was originally placed in service by the surviving spouse and the then-living deceased spouse before 1981, if that property was confirmed to the surviving spouse after the deceased spouse's death in 1982.

The facts of this case have been fully stipulated pursuant to Rule 122, and are so found. At the time the petitions were filed in this case, petitioner and executrix Vernice H. Gasser resided in Napa, California.

Peter A. Gasser (Peter) and petitioner Vernice H. Gasser (Vernice) were husband and wife who resided in California during their marriage. Peter died on May 22, 1982. Vernice is Peter's surviving spouse and is the executrix of his estate.

Peter and Vernice (the Gassers) owned certain depreciable assets as community property (the Property). All of the Property was acquired and placed by the Gassers in a condition or state of readiness and availability for a specifically assigned function, either for use in a trade or business or for the production of income, in the 1960's or the 1970's. The Property was depreciated by the Gassers during the years prior to Peter's death using the straight-line method of depreciation with useful lives ranging from 5 to 15 years for tangible personal property and 20 to 33 years for real property.

Upon Peter's death on May 22, 1982, all of the Gassers' community property, including the Property, was included in Peter's gross estate for Federal estate tax purposes, 50 percent thereof being subject to Federal estate tax. Vernice's undivided 50-percent community property interest

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

in the Property was confirmed to her at the time of Peter's death under the community property laws of the State of California and Peter's duly probated will.

The returns of the petitioners for the years 1982 and 1983 used ACRS depreciation from and after Peter's death with respect to the properties listed on an exhibit attached to the returns (including the Property) and used as the cost basis of the properties their fair market value as determined for Federal estate and gift tax purposes in Peter's estate. The basis and value of Vernice's one-half interest in the Property is not at issue. (Respondent's brief.) As a result of those ACRS deductions, Vernice incurred a net operating loss in 1983 which she carried back to the 1980 calendar year.

OPINION

The primary issue presented in this case is whether section 168(e) operates to deny petitioners' ACRS deductions with respect to the Property. We conclude that it does and hold for respondent on this issue.

In 1982 and 1983, section 168 provided for the ACRS deductions which were used by Peter (deceased) and Vernice in 1982, and Vernice individually in 1983. At that time, ACRS provided for relatively rapid depreciation for "recovery property." Sec. 168(a).[3] Recovery property was defined as tangible property of a character subject to the allowance for depreciation which was used in a trade or business or held for the production of income. Sec. 168(c)(1). The Property fits this broad general definition of recovery property.

Section 168(e) excludes certain assets from the general definition of recovery property set forth in section 168(c)(1). The effect of that exclusion is to preclude the availability of ACRS depreciation. Section 168(e)(4) provides that recovery property does not include section 1245 or 1250 property acquired by the taxpayer after December 31, 1980, if inter alia, the property was owned or used at any time during 1980 by the taxpayer or a related person. Secs. 168(e)(4)(A)

---

[3]Sec. 168 was amended by the 1986 Tax Reform Act. As stated in note 2, *supra*, references herein to sec. 168 and its subsections refer to the law prior to its amendment. ACRS depreciation deductions first became available for 1981.

and (B). For purposes of section 168(e)(4), a spouse is considered to be a related person. Secs. 168(e)(4)(D), 267(b)(1), 267(c)(4).

Section 168(e)(4) does not apply to the acquisition of any property by the taxpayer if the basis of the property in the hands of the taxpayer is determined under section 1014(a). Sec. 168(e)(4)(H). Section 1014(a) provides for a step-up in basis, to fair market value at the date of decedent's death, for property acquired from a decedent. Sec. 1014(a)(1). Section 1014(b)(6) provides that, for purposes of section 1014(a), property may be considered to have been acquired from the decedent if:

(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, or possession of the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or section 811 of the Internal Revenue Code of 1939.

In this case, at least one-half of the whole of the community interest in the Property was includable in determining the value of Peter's estate. Therefore, the basis of the Property was determined pursuant to section 1014(a).

Respondent argues that section 1014(b) serves only to determine basis and has no application to section 168(e)(4). We agree that section 1014(b) serves to determine basis by way of section 1014(a). However, the Property falls within the exception of section 168(e)(4)(H) and section 168(e)(4) does not apply to exclude Vernice's one-half interest from the definition of recovery property.

Recovery property does not include property which was placed in service by taxpayers before January 1, 1981. Sec. 168(e)(1). "Placed in service" is defined in section 1.168-2(l)(2), Proposed Income Tax Regs., as:

(2) *Placed in service.* The term "placed in service" means the time that property is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity. In the case of a building which is intended to house machinery and equipment, such readiness and availabil-

ity shall be determined without regard to whether the machinery or equipment which the building houses, or is intended to house, has been placed in service. However, in an appropriate case, as, for example, where the building is essentially an item of machinery or equipment, or the use of the building is so closely related to the use of the machinery or equipment that it clearly can be expected to be replaced or retired when the property it initially houses is replaced or retired, the determination of readiness or availability of the building shall be made by taking into account the readiness and availability of such machinery or equipment. For a building which becomes available for use in separate stages, see paragraph (e)(3) of this section. [4] [49 Fed. Reg. 5956 (Feb. 16, 1984).]

The stipulation of facts tracks the regulatory language when it says the Property was "acquired and placed by the Gassers in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business or for the production of income in the 1960's or the 1970's." Therefore, there is little doubt that the Property was placed in service before 1981. The question then becomes who placed it in service during that time.

According to the stipulation of facts, Vernice and Peter placed the property in service during the 1960's and 1970's. Petitioners argue that Vernice did not actually place the Property in service prior to Peter's death in 1982 because she had not yet acquired the Property. Respondent argues that Vernice's community property interest in the Property was hers before Peter's death and remained hers thereafter.

Where the incidence of Federal taxation depends upon property ownership, State law determines who owns the property. *Poe v. Seaborn,* 282 U.S. 101, 110 (1930); *Estate of Stewart v. Commissioner,* 79 T.C. 1046, 1048 (1982). Peter and Vernice were husband and wife and resided in California, a community property State, during their marriage. The California Civil Code defines community property interests as follows:

Sec. 5105. Community property; interests of parties

The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests. This section shall be construed as defining the

---

[4]While we recognize that proposed regulations are not entitled to the usual weight accorded to final regulations, *Eller v. Commissioner,* 77 T.C. 934, 946 (1981), this proposed regulation has been outstanding since 1984 and both parties refer to it. We use the language of the proposed regulation to express our own views.

respective interests and rights of husband and wife in community property. [Cal. Civ. Code sec. 5105.]

The effect of this statute to create in the wife a present interest in the property was upheld in *United States v. Malcom*, 282 U.S. 792 (1931). Since the 1927 statute, it has been the settled law of California that the wife has a present interest in community property. *Estate of Murphy v. Murphy*, 15 Cal. 3d 907 (1976), 544 P.2d 956.

Under California law, Peter and Vernice had present equal interests in the Property at the time it was placed in service. As community property owners, both Vernice and Peter placed the Property in service prior to 1981. They also depreciated the Property during that period. Therefore, Vernice is not eligible for ACRS depreciation because she placed the Property in service prior to 1981. Sec. 168(e)(1).

Petitioner argues that section 1.168-4(d)(9), Proposed Income Tax Regs., operates to permit ACRS deductions in this case. That regulation provides as follows:

*Acquisitions by reason of death.* Property acquired by the taxpayer after December 31, 1980, by reason of death, for which the basis is determined under section 1014(a), is eligible for ACRS. [Sec. 1.168-4(d)(9), Proposed Income Tax Regs., 49 Fed. Reg. 5961 (Feb. 16, 1984).]

Since we have found that Vernice had a present existing and equal interest in the property before Peter's death, she cannot be said to have acquired that interest later for purposes of the regulation.

At first blush, section 168(e)(1) seems to conflict with the exception to section 168(e)(4) set forth in section 168(e)(4)(H). However, those paragraphs can be reconciled. Section 168(e)(1) looks to prevent different perceived abuses than does section 168(e)(4). Section 168(e)(1) precludes ACRS deductions for property placed in service by the taxpayer prior to 1981, whereas section 168(e)(4) denies ACRS depreciation deductions in cases where the property was owned or used by the taxpayer or a related person during 1980. For example, in many situations, depreciable property could pass by devise to a surviving spouse who had no pre-existing ownership rights and who had not, together with the deceased spouse, placed the property in service prior to 1981. Section 168(e)(1) would not apply there. Section 168(e)(4)(H) might, depending on the circumstances, prevent

the application of the related party "anti-churning" rules of section 168(e)(4).

Because of concessions, including one by respondent,[5]

*Decisions will be entered under Rule 155.*

---

[5]Respondent indicated in its brief that a Rule 155 computation would not be necessary if we found for respondent. However, in the stipulation of facts respondent concedes that petitioners are entitled to claim depreciation relating to the "Peace House" on their 1982 return in the amount of $528.